UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
COVINGTON

CIVIL ACTION NO. 04-111-DLB

MICHAEL W. AMEND                                                                                                              PLAINTIFF

vs.                                                **OPINION & ORDER**

CITY OF PARK HILLS, ET AL.                                                                                          DEFENDANTS

* * * * * * * * * * * * *

This is an action under 42 U.S.C. § 1983 arising from Plaintiff's discharge as the Fire Chief for the City of Park Hills. It is currently before the Court on Defendants' Motion for Summary Judgment. (Doc. #18) Having considered the parties' filings, and having heard oral argument, Defendants' motion will be granted, for the reasons explained below.

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Thomas Amend (Amend) served as the Chief of The City of Park Hills Volunteer Fire Department from March of 2003 until March of 2004. By statute, The City of Park Hills (City) is a city of the fourth class. K.R.S. § 81.010(3). It has adopted the mayor-council plan provided by K.R.S. § 83A.130 as its form of government. Under this plan, Defendant Hellmann was at all times material to this case the Mayor and chief executive officer of the City, with statutory responsibilities of supervising all departments and the conduct of all City officers and employees. K.R.S. § 83A.130(3).

Plaintiff acknowledges the Fire Department is one of the departments within the City. For its operations, it utilizes the City's tax identification number, as do all other City departments. The volunteer members, chief, and officers meet and train at the Park Hills

City Building.  The equipment used in the operation of the Fire Department is supplied by and titled to the City.

Under the mayor-council plan, each department provides directly to the mayor any reports deemed necessary.  K.R.S. § 83A.130(3).  Plaintiff acknowledges that when he was Chief, he reported monthly to the Mayor and City Council, and that these monthly reports were approved by council vote.  He testified that he contacted Mayor Hellmann for questions or problems related to the operation and management of the Fire Department.

Although Plaintiff acknowledges the City has within it a Fire Department, an atypical aspect to this case is Plaintiff's contention that there also exists the Park Hills Volunteer Fire Department, which he characterizes as an "organization" separate from the City's Fire Department.  Amend became a "member" of the volunteer organization in 1991.  The organization has a Constitution and By-Laws.  During Amend's tenure as Chief, the organization functioned under a Constitution adopted in 1992, which Amend had updated in September, 2003.  The Constitution and By-Laws describes the volunteer fire department as an organization, with a board of trustees elected from the membership.  It also provides that the membership elect certain other clerical officers.  Defendants maintain that the volunteer organization has no legal existence separate from that of the City's Fire Department.  They acknowledge that the organization members have adopted a Constitution and By-Laws, but point out that these have never been approved of nor adopted by the City.[1]

---

[1] In earlier proceedings dismissing Count I of Plaintiff's Amended Complaint, the Court concluded K.R.S. Chapter 95 did not apply to Amend's employment as Fire Chief because the City had not adopted the civil service provisions.  There are, of course, other statutes dealing with volunteer and other fire departments, such as K.R.S. Chapter 75, Fire Protection Districts.  But apparently the parties agree that the volunteer fire department was not a fire district.  Whether and to what extent Chapter 75 or any other statute

2

Amend applied for the February, 2003 fire chief opening by submitting a letter to the volunteer organization's board of trustees, who reviewed the letter and directed it to the outgoing fire chief. The outgoing chief then submitted a recommendation to Mayor Hellmann that Amend be selected as chief. Amend was formally appointed Fire Chief by the Mayor on March 10, 2003, memorialized in a resolution of City Council. Amend also signed an oath of office. Other than this resolution, Amend had no separate, written document with the City related to his appointment as Chief of its Fire Department.

Though Amend does not deny the Mayor appointed him, he also points to the fact that he was also elected Fire Chief by the membership of the volunteer organization. His recollection is that the members have always elected the fire chief; he could not recall an occasion where the City interfered in the choice, selection, or term of office for the chief. Nor could he recall an occasion since becoming a member in 1991 where either the members or the City removed a fire chief. Defendants do not dispute that the past practice has been for the volunteer membership to elect a fire chief. Indeed, Mayor Hellmann is also a member of the volunteer organization and observed this practice first-hand. He acknowledged his experience has been that the membership elected the person they wanted to serve as volunteer fire chief, and that this person has never been rejected by the City. Though Defendant Hellmann could not recall an occasion during his membership where a fire chief had been removed, he had knowledge of two prior situations where the

---

arguably might apply to Park Hills' volunteer organization has not been considered by the Court, since no other statutes have been identified by the parties, nor have they pointed to evidence that would implicate any other statutes.

3

members considered having City Council relieve a fire chief and a volunteer life squad chief, though the individuals ultimately resigned.

The position of fire chief for the City's Fire Department is not a traditional full-time occupation. Plaintiff actually had other full-time employment with the City of Florence Fire Department. The Park Hills Fire Chief is full-time in that the chief is always responsible for the Fire Department, but the job position did not involve a full-time salary. The fire chief receives a City vehicle for his use, and the City paid what has been described in the record as a $5,200 stipend or salary.[2]

While he served as Fire Chief, Amend also served as a part-time paid firefighter and emergency medical technician for the Fire Department. He also continued his membership in the volunteer organization. After serving as Fire Chief for approximately one year, in March of 2004 Mayor Hellmann asked Amend to resign. Apparently when Amend refused to immediately resign, the Mayor notified him by letter that he was being terminated as Fire Chief. The letter stated this action was taken because the Mayor believed Amend's department management skills inadequate, particularly in managing the life squad which was in danger of losing its license and thereby in a state of emergency.[3] This lawsuit followed.

---

[2] Though Plaintiff desires to characterize this as a stipend intended to cover ancillary expenses incurred with being a volunteer fire chief, Defendant Hellmann's recollection was that the payment started as a way of providing some compensation to a prior fire chief who had given up a part-time paid position with the City in order to accept an appointment as chief.

[3] The once separately established Life Squad for the City of Park Hills had been merged into the City's Fire Department, thereby coming under the supervision and direction of the fire chief. This was done by a municipal order, the preamble to which states that "the *members* of the Fire Department and Life Squad, in consultation with the Mayor,..." (emphasis added). Thus, at the time Amend was appointed Chief, he was also responsible for the Life Squad. (The Life Squad was recently removed as a part of the City's Fire Department and combined with a nearby city's life squad.)

**DISCUSSION**

*Standard of Review*

Plaintiff's remaining claim is that the City, in discharging him as Fire Chief and removing him as a firefighter and member,[4] violated his Fourteenth Amendment rights because he was denied a property interest without due process. The Fourteenth Amendment guarantees that deprivation of certain substantive rights, including property rights, will not occur except pursuant to constitutionally adequate procedures. *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 541 (1985). In reviewing a Fourteenth Amendment Due Process claim, the court applies a two-step analysis. First, it determines whether the plaintiff has a property interest entitling him to due process protection. And second, it determines what process is due if a property interest is found to exist. *Leary v. Daeschner,* 228 F.3d 729, 741-42 (6th Cir. 2000).

In order to survive summary judgment, Amend must point to evidence that he had a property interest in his employment protected by the Fourteenth Amendment. *Loudermill,* 470 U.S. at 538. The Supreme Court in *Board of Regents v. Roth* characterized such property interests as a "legitimate claim of entitlement" to the employment, rather than an abstract need or desire for it or a unilateral expectation of it. 408 U.S. 564, 577 (1972).

Whether Amend has a legitimate expectation of continued employment is determined by state law. *Id.* (property interests in employment are "created and ... defined

---

[4] Plaintiff was not employed by the City in his status as a member, so arguing a property interest in this status is misplaced. The City cannot dictate who the membership of the volunteer organization will be, except to the extent that the Constitution calls for the board of trustees to do an initial check, with the officers committee, comprised of the president and appointed officers, to give final approval to those seeking membership.

5

by existing rules or understandings that stem from an independent source such as state law"); *Bailey v. Floyd Co. Bd. of Educ.,* 106 F.3d 135, 141 (6th Cir. 1977). And contrary to Amend's assertion, this determination is a question of law for the court, not one of fact. *See Zurc v. Lucas Co., Ohio,* 762 F.2d 1014, 1985 WL 13066, at *2 (6th Cir.)(unpublished table decision)(claim of entitlement to continued employment is a question of law).

### *Analysis*

A protected property interest can arise from various sources of state law. *Bailey,* 106 F.3d at 141. Amend "must be able to point to some statutory or contractual right conferred by the state which supports a legitimate claim to continued employment." *Id.*

As for a statutory right to continued employment, Plaintiff does not refer to any statute as evidencing a claim of entitlement to his continued employment as chief. Defendants, on the other hand, rely upon statutory authority as evidencing the opposite proposition; that is, the Mayor's right to remove a fire chief at will. Defendants point to K.R.S. § 83A.130(9), which gives a mayor power "to appoint and remove all city employees, including police officers, except as tenure and terms of employment are protected by statute, ordinance or contract ...." Based on the record, it is not entirely clear whether Amend as Fire Chief would be considered a city *employee* as opposed to an *officer.* Nevertheless, Plaintiff has not articulated any reason why this statute would not apply to his position as Chief of the City's Fire Department, nor identified any statute providing him with employment protection that would except him from this statute.

Though Defendants' summary judgment filings do not note it, K.R.S. § 83A.080 appears supportive of their position, if the fire chief is viewed as being a City officer. This statute is directed to nonelective city offices and officers within the mayor-council plan of

government. It provides that all nonelected city offices shall be created by ordinance specifying the office title, powers and duties, etc. The statute contains a nonexhaustive list of offices that must be considered nonelected offices, including city clerk, chief of police, and fire chief, *other than a volunteer fire chief.* K.R.S. § 83A.080(2) (emphasis added).

Though Defendants' position is that the fire chief is a city employee subject to dismissal by the mayor pursuant to K.R.S. § 83A.130(9), the record contains a 1967 ordinance ordaining that the police chief and fire chief "are hereby appointed the Public Officers of the City." Relying on this ordinance, Defendants point out that the fire chief was a city officer for a period of time. Defendants do not identify when this status ended, but stated at oral argument that this status was superseded by the 2002 enactment of K.R.S. § 83A.080(2). However, that statute also provides that "each appointed and elected city office existing upon adoption of this chapter shall continue until abolished by ordinance...." K.R.S. § 83A.080(4). Thus, even though under the statute a volunteer fire chief is not automatically considered a nonelected office, neither does the statute expressly prohibit it from being considered one. This chapter was adopted in 1980, but the City's 1967 ordinance declaring the fire chief an officer of the City predated the chapter. This appointed public office of the City remains intact, unless it was abolished by the City by a subsequent ordinance not identified by the parties.

The significance here of applying this statute lies in subsection (3). It provides that these nonelected officers are appointed by a city's executive authority (the mayor) with approval by the legislative body (council). These officers –

> shall be appointed by the executive authority of the city and, except in cities of the first class, all these appointments shall be with approval of the city legislative body if separate from the executive authority. The officers may be

7

> removed by the executive authority at will unless otherwise provided by statute or ordinance. Upon removal of a nonelected officer at will, the executive authority shall give the officer a written statement setting forth the reason or reasons for removal. However, this requirement shall not be construed as limiting in any way the at-will dismissal power of the executive authority.

K.R.S. § 83A.080(3). Therefore, under this provision, the mayor has authority to not only appoint the fire chief, but terminate the chief at will.

Accordingly, whether K.R.S. § 83A.130(9) applies because the fire chief is considered an employee, or whether K.R.S. § 83A.080(3) applies because the fire chief is considered an officer, both statutes reinforce that service is at the mayor's pleasure. And certainly nothing within either provision gives rise to any type of property interest to Plaintiff for purposes of defeating summary judgment.

As for a contractual right to continued employment as fire chief, the general rule in Kentucky is that an employment relationship is at-will. "[A]n employer may discharge an at-will employee for good cause, for no cause, or for a cause that some might view as morally indefensible." *Wymer v. JH Properties, Inc.,* 50 S.W.3d 195, 198 (Ky. 2001). An exception, however, to the at-will general rule has been recognized for contractual obligations where the parties have clearly stated an intent to be bound by another standard. *Shah v. American Synthetic Rubber Corp.,* 655 S.W.2d 489, 491 (Ky. 1983). "[P]arties may enter into a contract of employment terminable only pursuant to its express terms – as 'for cause' – by clearly stating their intention to do so." *Id.* at 492.

Amend has not pointed to evidence of an express contractual relationship with the City for the position of fire chief that would alter at-will status. He acknowledges he had no

8

separate written employment contract with the City for his position of Fire Chief.  Therefore, he has no claim of entitlement based upon an express written contract.

Plaintiff also points to the personnel policies adopted by the City as evidencing an implied contract of employment.  The scope of positions covered by the personnel policies is stated as:

> all authorized positions, except members of boards and commissions, legal counsel, consultants, advisors, independent contractors and *members of volunteer organizations.*  They do not apply to provisional and *part-time* workers, unless specifically stated.

Chapter 1, Sec. 3 (emphasis added).  The policies are accompanied by a "Certification of Receipt" by the employee, the first line of which reads that "These personnel policies are not a contract of employment."  Chapter 9 covers disciplinary action.  It generally calls for progressive discipline to be the guiding principle – verbal warning, reprimand, suspension, demotion, dismissal.  But it also expressly states "However, the personnel administrator, based upon the severity of the event, may utilize any of the actions detailed in this section as a first step."  And under "Dismissal" it further states "The Personnel Administrator has the authority to terminate any worker whose job performance or actions are determined to be detrimental to the City.  Additionally, the Personnel Administrator has the authority to dismiss a worker for any other reason, or no reason."

Based on the express language of the policies, they do not apply to Plaintiff as a volunteer member or as a part-time firefighter paid by the City.  Assuming *arguendo* that they do apply to the extent the position of City fire chief can be viewed as being full-time in an authorized position to which the policies apply, the policies nevertheless allow for dismissal at will.  This is true despite the fact that a progressive discipline process is

9

provided. Progressive discipline is favored, but not required. Though reasons may be given for dismissal, employment can be terminated for no stated reason. The personnel administrator retains authority to dismiss an employee for any reason or no reason.

Under Kentucky law, the circumstances herein would not give rise to a contract of employment. The progressive discipline set forth in the City's policies served merely as guidelines the City would strive to follow, not an obligation to do so. *See Nork v. Fetter Printing Co.,* 738 S.W.2d 824, 825, 827 (Ky. Ct. App. 1987) (handbook expressing methods of dealing with employees and terms relating to discharge did not evidence clear intention to enter into contract of employment between employer and employee terminable only pursuant to express terms rather than at-will). And the certification page of the City's policy manual expressly disclaims a contract of employment. *See Noel v. Elk Brand Mfg. Co.,* 53 S.W.3d 95, 98-99 (Ky. 2000); *Nork,* 738 S.W.2d at 826-27 (both finding that an employee handbook containing a disclaimer stating that it is not a contract maintains the at-will relationship between employer and employees). Thus, Plaintiff cannot rely upon the City's personnel policies as evidencing a claim of entitlement to employment as fire chief.

Moreover, Plaintiff has not shown that the Mayor or City Council affirmatively represented to him that he would remain in the position of Fire Chief of the City's Fire Department until he decided to leave. Amend relies upon his knowledge of past situations where the fire chief has remained in the position indefinitely until he decides to leave. However, this falls far short of satisfying *Shah's* requirement of a clear statement not to terminate without cause. In addressing the argument that plaintiff believed he had indefinite employment so long as he performed satisfactorily, the district court in *McNutt v. Mediplex of Kentucky,* 836 F. Supp. 419, 421-22 (W.D. Ky. 1993) noted that such covenants were

rejected in *Shah.* "[A] covenant for 'permanent employment', without more, [is] fatally defective under the 'employment at will' doctrine...." *McNutt,* 836 F. Supp. at 422 (quoting *Shah,* 655 S.W.2d at 491). Simply because the City, to Plaintiff's knowledge, had never before fired a fire chief is not the equivalent of an express intent by either the City or Amend to enter into an employment relationship terminable only for cause. Indeed, accepting this argument would mean not only that the employment was something other than at will, but that it was absolute employment, since the chief remains until he decides to leave, regardless of cause.

Finally, Plaintiff maintains he had a legitimate claim of entitlement to the fire chief's position based not on a statute or contract, but because Defendants had no lawful right to remove him as the elected fire chief of the volunteer organization. That is, that Defendants had no right to control the practices of that separate organization.

This argument is misplaced. Plaintiff did not have a legitimate claim to continued employment as the *City's* fire chief because of some perceived dividing line between the City's Fire Department and the organization of volunteer members staffing it. The Constitution and By-Laws provide for the volunteer membership to elect certain clerical officers – an assistant treasurer, treasurer, and secretary. However, the president and vice president of the volunteer organization are not elected clerical officers. Under the Constitution, the City's fire chief is automatically the organization's president. And the "highest ranking department officer in attendance at any meeting" acts as the vice president.

According to Article 5, Section 8 of the Constitution and By-Laws,

11

> The Chief's position shall only be filled by an Active member in good standing. Candidates shall only be considered after first submitting their interest in writing to the B.O.T. [board of trustees] and the current Chief or Acting Chief. The B.O.T. and the current Chief or Acting Chief shall then review each candidate and make one recommendation to the Mayor *for his/her consideration in appointment.*

(emphasis added). The document also describes an "officer's committee." This committee is comprised of the chief and all *appointed* fire and rescue officers. Art. 8 (emphasis added). This committee is responsible for managing Fire Department affairs; approving or disapproving applicants once the trustees have done an initial investigatory check; and entering into any contracts on behalf of the Fire Department.

This language from the volunteer organization's Constitution and By-Laws supports Defendants' position that the fire chief is actually chosen by and serves at the pleasure of the Mayor. Neither the president nor vice president are elected under the Constitution. They are identified by looking to the appointed chief, and to who among them at the meeting is the highest ranking appointed officer. These are not appointments by the organization, but by the Mayor.[5] So, by its Constitution and By-Laws, the volunteer organization agrees to accept as its president the person appointed fire chief of the City's Fire Department, an appointment the Constitution recognizes as being made by the Mayor.

Plaintiff argues that the chief has always been elected by the membership and has never been ousted by the Mayor. But this past practice does not override the stated

---

[5] For example, Defendants attached to their motion a 1999 municipal order noting the *appointment* of city employees and nonelected appointees including then fire chief Dennis Finke. This list included Plaintiff as a Lieutenant in the Fire Department. The order also provided "All designated persons are hereby appointed effective as of January 1, 1999. The term of employment is entirely at the option of the Mayor and/or City Council." On other occasions, City Council has approved a fire chief's monthly report identifying a slate of department officers. Though Fire Department officers are appointed, traditionally the City has endorsed the selections made by the fire chief.

language of the organization's Constitution and By-Laws, which language was expressly renewed during Plaintiff's service as chief when the 2003 Constitution and By-Laws were adopted. Nor is it overridden in actual practice. This is because, regardless of the practice of the membership voting on a chief, Plaintiff does not deny that it is still the Mayor who makes the final decision on the selection and appointment of a fire chief, after receiving a recommendation from the outgoing chief.

Moreover, even if the volunteer organization were viewed as a separate entity, Plaintiff still does not have a claim of entitlement to continued employment as fire chief *for the City*. The relevancy of this practice of having the membership vote on the chief, if any, lies in whether such an election binds the volunteer organization in some way, not whether it binds the City.[6] It is undisputed that the City has neither ratified nor approved the Constitution and By-Laws, nor have they ever been submitted to the City for consideration. Though as a practical matter it may be in its best interest to do so, the City is not legally bound to accept as the head of its Fire Department the person recommended by the volunteer organization. Acquiescing in the past choices of the volunteer members for chief and fire department officers does not impose a legal obligation upon the City that it unconditionally accept the individuals elected, nor constitute a waiver of its ultimate authority to select these individuals for appointment. Indeed, Defendants note two prior occasions where the members considered asking City Council to dismiss the fire chief and volunteer squad chief. When the Mayor relieved Plaintiff of his duties and obligations, as

---

[6] Moreover, it still does not evidence a claim of entitlement necessary to establish a property interest in employment within the volunteer organization. The fire chief is not an employee of the volunteer organization. And the election process relates only to the manner of and authority to select the fire chief, not that a term of office is guaranteed or that the chief will be removed by the members only for cause.

well as halted Plaintiff's receipt of any further benefits, it was in Plaintiff's role as Chief of the City's Fire Department. Though the volunteer organization's Constitution and By-Laws suggests it has agreed ultimately to accept as its president and fire chief the person appointed by the Mayor, if Plaintiff believes otherwise, that disagreement lies between Plaintiff and the volunteer organization, not Plaintiff and the City.

## CONCLUSION

In conclusion, Plaintiff has failed to establish a property interest sufficient to invoke federal constitutional protections for his status as Fire Chief of the City's Fire Department. In light of this fact, Defendants' motion will be granted.[7]

Accordingly, **IT IS ORDERED** that:

(1)   Defendants' Motion for Summary Judgment on the remaining count of the Complaint (Doc. # 18) is hereby **granted;** and,

(2)   All claims having now been dismissed, this matter is hereby **stricken** from the docket of the Court.

A separate Judgment will be entered contemporaneously herewith.

---

[7] Defendants' motion also argues that the claim should be dismissed because Amend failed to show the inadequacy of state processes and remedies to redress his alleged due process violations, as required by *Parratt v. Taylor,* 451 U.S. 527 (1981), *partially overruled on other grounds in Daniels v. Williams,* 474 U.S. 327 (1986). This argument need not be addressed, given the Court's conclusion that Plaintiff has failed to establish a claim of entitlement. The Sixth Circuit's opinion in *Mitchell v. Fankhauser,* 375 F.3d 477 (6th Cir. 2004) contains an extensive overview of this "inadequate state processes" argument, discussing the inconsistent and conflicting applications of the requirement within the circuit. But in the context of a public employee's challenge to his termination, the *Mitchell* circuit court concluded that such was not the "random, unauthorized deprivations of property" that would implicate *Parratt's* requirement to plead and prove the inadequacy of post-termination state-law remedies. *Id.* at 484. Such would also seem to be the case here.

This 2nd day of November, 2005.



Signed By:
*David L. Bunning*   DB
United States District Judge

G:\DATA\Opinions\2-04-111-MSJOpin&Order.wpd